Our next case on today's docket is Jeremy Dickerson, his father and next friend, Ms. Skyler Dickerson v. Jane Barker, D.O. We have Russell Scott for the appellant and Mr. Bartholomew for the applicant. You may proceed, Mr. Scott. We do. I can't see you as I move over like that, so if you want any kind of recording, yes. And I'll have to start all over again with my little spiel. Okay, my abbreviated version, today's case on this morning's docket is Jeremy Dickerson, his father and next friend, Ms. Skyler Dickerson v. Jane Barker, D.O. We have Russell Scott for the appellant and Joe Bartholomew for the appellate. And you may proceed, Mr. Scott. Thank you, Your Honor. May it please the court, my name is Russell Scott. I appear here on behalf of Dr. Jane Barker. Briefly, the procedural history of this court, we filed a motion to dismiss for interstate foreign nonconvenience, which was denied by the trial court. We petitioned for leave to appeal to this court, which under Supreme Court Rule 306, which was denied. We then petitioned for leave to the Supreme Court, which denied the leave to appeal, but issued a supervisory order that this court consider the appeal. The issue in this case is very simple. There is one factor in this case that supports the idea of this case being in St. Clair County, Illinois. And that is the fact that the doctor happens to live in St. Clair County, Illinois. However, the question really is whether the residence of the defendant alone in the chosen forum is enough to defeat a motion for interstate foreign nonconvenience. This is not an issue, obviously, of venue or jurisdiction, but foreign nonconvenience, of course, presupposes both of those. It presupposes that there are at least two possible forums where a case can be heard. There really are no disputes here on facts. The defendant resides in St. Clair County. Every other private factor in this case favors this case being heard in Missouri. St. Clair County is not the plaintiff's home forum. The plaintiff lives in St. Genevieve County, Missouri. All the sources of proof are in Missouri. All the witnesses, all the hospital and medical records, all acts alleged to have been negligent, all subsequent medical treatment, all in Missouri. All of the private interest factors cited by Gridley.  The plaintiff continues to argue that how can it be inconvenient for Dr. Barker to appear in Belleville when she lives in O'Fallon. But that is a personal convenience, which should not be the deciding factor. Gridley says the factors are one. We're not supposed to ignore that, though, are we? No, no. So inconvenience to the parties is a factor we should consider? Certainly. But it's not the sole factor. And here Gridley says that the factors are one, the convenience of the parties. Two, the relative ease of access to sources of testimonial, documentary, and real evidence. And following that also, all other practical problems that make trial of a case easy, expeditious, and inexpensive. For example, the availability of compulsory process to secure attendance of unwilling witnesses. The cost to obtain attendance of willing witnesses and the ability to view the premises if appropriate. In this case, Illinois has no compulsory process over any of the evidence in this case except the testimony of Dr. Barker. The records are in the hospital in St. Genevieve. The nurses, the doctors, the doctors in Jefferson County, Missouri, where subsequent treatment occurred. The records and doctors in St. Louis County, Missouri, where the subsequent treatment occurred. All of these, every time we had want to do something here, we would have to open a miscellaneous matter in Missouri to have a subpoena issued for a record, for a doctor, testimony, whatever. How many witnesses do you anticipate there would be in the case? Well, there are a lot named in the discovery. I can't remember off the top of my head the exact number. As indicated, there was the treatment at St. Genevieve County and the emergency room there. And then later at Jefferson County Memorial Hospital. And then subsequently, of course, the treatment that has occurred and surgeries that have occurred in St. Louis County. Is that St. Louis County or St. Louis City? Maybe the City. Is that closer to St. Genevieve Courthouse? No. No. No, there's no question about that. But the point is still, it's a different state. And the question is where is the most appropriate place for a case that arose in Missouri and all of the evidence and all of the proof is in Missouri, all of the acts occurred in Missouri. Why should St. Clair County be forced to undergo that type of expense? Which goes into the public interest factors again, which again, greatly. The interest in deciding localized controversies locally. The unfairness of imposing the expense of a trial and the burden of jury duty on residents of a county with little connection to the litigation. And the administrative difficulties presented by adding further litigation to court dockets in already congested form. Here, Missouri law will have to be applied to the substance of the case. The Illinois Supreme Court has noted in Fennell that dismissal of cases without significant factual connections to the form ensures that those jurisdictions are not unfairly burdened with litigation in which they have no interest or connection. So, is there an interest because the defendant is a citizen of the state of Illinois and practices as a doctor? Does that give Illinois an interest in the competency, I'm going to say, just because of the fabrication? Arguably, yes. Yes, but certainly the interest of Missouri is far superior because you're talking about the interest not only of medical treatment rendered in Missouri, but rendered in Missouri to Missouri citizens. We have the combination of, remember that the plaintiffs live in St. Genevieve County as well. So, while certainly you could argue that there is some interest in, there's an interest in every state to have doctors be competent and practice well. But the compelling interest here is in Missouri. So, I mean, that's the, that is the argument. Now, you know, the argument again, would it be, Mr. Bartholomew has cited the Kwasniewski case throughout the history of this litigation. And the language in there about it would be incongruous for the resident defendant to claim inconvenience. Certainly, it would not be inconvenient for Dr. Barker to go to Belleville to pay her taxes or to pick up a death certificate in the county clerk's office. But that's different from the inconvenience in defending a modern day medical malpractice case. And that, we think, is the telling factor and that this case should be. So, what is that inconvenience for her? Well, as I've indicated. Okay, you indicated that she works six or seven shifts a month. Yes, 24 hour shifts. So, actually, as we pointed out in our reply brief, she spends more, you know, she spends more time working in Missouri than if she were working full time in Illinois. But the inconvenience is the sources of proof. It's all of the things that Gridley talked about. I think those are the key elements, the testimonial, documentary, and real evidence. And that's what Gridley has talked about. And, of course, it can't be forgotten that Gridley involved an Illinois resident as well. So, we would ask that the case be dismissed and to be refiled in whatever appropriate county Joe wants to file it in in Missouri. Okay, thank you, Mr. Scott. And we will allow Mr. Bartholomew. Good morning. Good morning, Mr. Scott. Good morning. May it please the Court, my name is Joe Bartholomew and I represent Jeremy Dickerson, who brought a lawsuit on behalf of his son, Skyler, and individually for devastating kidney injury that occurred as a result of care provided by Dr. Barker, a St. Clair County resident in St. Genevieve, Missouri. Obviously, the issue for you is whether or not Judge Gleason used his discretion in denying the motion to dismiss based on interstate form nonconvenience, whether or not there are overwhelmingly or exceptional factors that would warrant this case being transferred or dismissed and moved to Missouri. So, let's look at whether or not Judge Gleason abused his discretion. There is no case in the state of Illinois, whether it be intrastate or interstate, that has upheld a transfer of a resident of defendant sued in his or her own county. Not one. There is not one case in the state of Illinois, whether it be interstate or intrastate. Are you talking about individuals or corporations? I'm talking about an individual. As we have here, one defendant where the legislature has said can be sued in the county of their residence. I'm not talking about a corporation whose venue is established solely by doing business. In fact, I don't believe there's even a corporation case under Illinois law where the corporation's headquarters or their residency is established because of their actual headquarters being in the venue in which the case is brought, where that has been allowed or said to have to be transferred. The only cases that talk about defendants are cases where their sole venue establishment in the jurisdiction is because they're doing business. We don't have that here. So we have no case in Illinois that supports the defendant's proposition. Not one. We have a Supreme Court case, interstate or non-convenience case, that is directly up where a conservative Supreme Court jurist says it is virtually impossible for a defendant to argue that it is inconvenient to have a case brought into the court. This court would have to overturn it. There's no way of getting around that opinion in this particular instance. What we have learned from all these opinions by the Supreme Court and this court is that the threshold issue is convenient, is inconvenient to the defendant. We don't go anywhere in the analysis unless the defendant can show that it is inconvenient for her to try a case in the county in which she lives, in which her children live, in which her husband lives, in which she pays taxes, both real estate and income taxes. Where her property is located so that if there is a judgment over her policy of insurance, that property will be the subject of the jurisdiction of the court. We don't have that in Missouri. We have that in the jurisdiction where she chooses to live. She is a licensed medical physician in Missouri and Illinois. So Illinois does have a substantial concern about her medical care being provided to patients. The threshold issue is, is it inconvenient for her? It is not. The Supreme Court has told you it's impossible to demonstrate when you have an individual defendant. She chooses to live in our county and pay taxes in our county. It's her home court. For her to argue it's inconvenient to try a case in her home court that's 15 miles from her home as opposed to 120 miles from her home is just ludicrous. How do you respond to the argument about the convenience of process? Well, these are all real interesting things. Unfortunately, Your Honor, they don't happen in modern day litigation. For example, in Missouri, I can't take a deposition of a doctor there unless they choose to provide their deposition, just like we have in Illinois. So to suggest that he's got to open up a proceeding, we've gotten all the medical records already in this case. There hasn't been one proceeding that's been opened in Missouri. Not one. That doesn't happen in a medical malpractice case. It just doesn't happen. The doctors who are going to testify are all going to testify voluntarily. They're not going to have any difficulty obtaining any of the nurses at the hospital. They've already contacted the next party. So for them to come to St. Clark County, that's not going to be approved. But before we even get to that process, before we even get to that issue is, number one, is it inconvenient for the defendant to try a case in her home county? The Supreme Court tells us it's impossible to show that, especially when you're talking about an individual defendant. Secondly, is it inconvenient to the party? Well, there's only two parties here. And the Supreme Court has told you that you can't consider the inconvenience to the plaintiff who chose to bring the action in St. Clark County. So we're back to the same threshold as, is it inconvenient to the defendant? And the answer by the Supreme Court is no, before we even get to the private factors or the public factors. This is a medical malpractice case. Anyone who's tried a medical malpractice case will know that there is going to be, and it has to do very specifically with the care being provided on that one emergency room visit that took less than 45 minutes. There is no dispute about what happened in that emergency room visit that's other than what Dr. Barker and the plaintiffs are going to testify to, even if there is a dispute. I'm going to have an expert witness who's obviously going to come in from out of the area. They're going to have an expert witness that they're going to bring in. All the subsequent medical care, whether it's tried in Illinois or tried in Missouri, are going to be by depositions, I guarantee you. I can't compel a doctor from Cardinal Glen and come to trial in St. Genevieve. Just can't do it. Just as I can't compel the doctor to come to trial in St. Clark County. That doctor will be done by video deposition, like all depositions, like trials proceeding all the time now. And the suggestion here is just so silly that they have to open up proceedings to get the medical records. They've gotten all the medical records already. There hasn't been one proceeding that's been opened. We've already taken the deposition of Dr. Barker in the Induron case. So, I mean, that's just not the reality of the world. And the reality of the world is it is not convenient for anyone to try a case in St. Genevieve. I can guarantee you that. Number one, they have very few medical malpractice cases. I think I've had a couple of them down there over the years. Number two, they're just not equipped to try a sophisticated case with electronics and the like. You know, you get self-service, I don't believe, in St. Genevieve. Number three, all the subsequent medical care is closer to St. Clark County. Her treating nephrologist, pediatric nephrologist, is at Cardinal Glen. Twenty miles, 25 miles at most from St. Clark County, 75 miles to St. Genevieve. How many occurrence witnesses from St. Genevieve would you anticipate? I would anticipate at most two at St. Genevieve. The second hospital, this little girl, this little boy went to the first admission at St. Genevieve and then, I believe it was a day or two later, went to a hospital in Jefferson County, which is still closer to St. Clark County than it is to St. Genevieve, and then was immediately transferred from that emergency room to Cardinal Glen where she was under the care of the physicians at Cardinal Glen. And most importantly, the nephrologist there, he had his kidney transplant procedure performed at Cardinal Glen Hospital. All of his dialysis was done at Cardinal Glen Hospital. So in terms of subsequent medical care, in terms of the witnesses that are going to testify, the nephrologist, maybe the surgeon at Cardinal Glen who would testify in the case. There may be testimony from the emergency room physician at Jefferson County Hospital, although I doubt that because the records come in and the records are undisputed. There may be a triage nurse at most and another nurse that would testify from St. Genevieve. It would be expert witnesses, my clients, and no other physicians that I'm aware of that are going to testify. Nobody else is going to need to be compulsory. I mean, again, this compulsory process is a red herring. It doesn't happen, it hasn't happened in this case. It will not happen in this matter, I guarantee it. So to suggest that that's one of the factors that would warrant this case being transferred. Where the bottom line is still the same. We have a single defendant in her home form defending her actions. I don't know why she would want to be anywhere else. That's how silly this whole home form nonconvenience law is. Because as we all know, it has really nothing to do with convenience. There isn't a person in this courtroom who is going to believe that this is to do with convenience. This is like the Chicago Bulls playing the Cleveland Cavaliers in Cleveland and Cleveland complaining about it. That's not happening in the real world here. They don't want to be in St. Clair County and she chooses to live in St. Clair County to pay taxes. To pay for the judges who are going to hear her case. To pay for the jurors who are going to hear her case. And to suggest that St. Clair County in Illinois does not have an interest. A substantial interest in litigation concerning one of its citizens is ridiculous. And that's the burden that they have to overcome. And to overcome the Supreme Court telling us it's impossible for you to show if the defendant is in her own county. Which is a threshold issue. So for these reasons, we're asking you to affirm the decision of Judge Gleason and the decision of this court to deny leave to appeal. Thank you. Thank you Mr. Orfell and Mr. Scott. I really don't have anything further unless the court has more questions. I have no questions. Do you agree the standard is abuse of discretion? Yes. Although the court, I believe in Piley or Fell, one of those two cases, indicated that it wasn't abuse of discretion. To rely on the fact that the defendant was doing business in the county and therefore there was a problem. Thank you. Thank you Mr. Scott and Mr. Bartholomew for your briefs and argument. We'll take them in and revise them as we go along.